UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>NANCY SCHAEDLER-MOORE, ET AL.,<br><br>　　　　　　　　　　　Defendants. | Case No.:  24-CV-978 W (AHG)<br><br>**ORDER GRANTING PLAINTIFF'S 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS [DOC. 21]** |

Pending before the Court is the United States's ("Plaintiff") motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) to Nancy Schaedler-Moore's ("Defendant") counterclaims.  ([Doc. 21], "*Mtn.*").  The Court decides the matter of the papers submitted and without oral argument.  See CivLR 7.1(d)(1).  For the reasons provided below, the Court **GRANTS** judgment on the pleadings as to all counterclaims.

I.   **BACKGROUND**

　　In 1993, the Internal Revenue Service ("IRS") began making income tax assessments against Robert Michael "Buzz" Scharringhausen.  (*Mtn.* at 3:23–24; 4:1–9.) The IRS later recorded their deficiency assessments as federal tax liens ("NFTLs") against

Mr. Scharringhausen with the San Diego County Recorder's Office. (*Id.* at 4:10–15.) In 2003, the IRS obtained a $488,307.96 plus interest judgment based on its earlier assessments. See <u>United States v. Scharringhausen</u>, No. 03-CV-00551 (S.D. Cal., Nov. 6, 2003).

In 2007, Mr. Scharringhausen purchased a residence located at 1137 Columbus Way in Vista, California ("the Property"). (*Counterclaim* [Doc. 6] at 5, ¶ 31.) In 2009, Defendant and Counterclaimant, Ms. Schaedler-Moore was invited by Mr. Scharringhausen to rent the Property as her residence. (*Id.* at ¶ 34.) Ms. Schaedler-Moore moved into the Property, began paying rent, and made various improvements. (*Id.* at 6, ¶¶ 35–40.) When Ms. Schaedler-Moore later learned that Mr. Scharringhausen was behind on mortgage payments and the Property was in foreclosure, she began making the payments and refinanced the loan through JG Wentworth. (*Id.* at ¶ 40.) Then, in 2012, Mr. Scharringhausen transferred the Property to Ms. Schaedler-Moore by quitclaim deed. (*Id.* at ¶¶ 42–45.)

In this case, the IRS has brought a foreclosure action against Ms. Schaedler-Moore based on the NFTLs attached to the Property. In response, Ms. Schaedler-Moore alleges three counterclaims for quiet title and statutory damages under 26 U.S.C. §§ 7432–33. (*Id.* at ¶¶ 54–73.) The United States now asks the Court to grant judgment on the pleadings asserting that all counterclaims fail as a matter of law. Ms. Schaedler-Moore opposes.

II. **LEGAL STANDARD**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). If both parties have had the opportunity to present material outside the pleadings relevant to the Rule 12(c) motion, the motion should be treated as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). "Although Rule 12(c) differs in some particulars from Rule 12(b)(6), the standard applied is virtually identical." <u>Moran v. Peralta Cmty. Coll. Dist.</u>, 825 F. Supp. 891, 893 (N.D. Cal. 1993). Thus, the Ninth Circuit has held that,

> [f]or the purposes of [a Rule 12(c)] motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false. Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law.

Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990) (citations omitted).

### III. DISCUSSION

In opposing the government's motion for judgment of the pleadings, Ms. Schaedler-Moore has put forward two theories as to why their counterclaims are not amenable to a Rule 12(c) motion. First, Ms. Schaedler-Moore argues that because she refinanced the Property's mortgage through a third-party lender, she should be equitably subrogated in place of the original purchase money mortgage ("PMM") lender. By standing in place of the PMM lender, she argues that she has priority over any outstanding tax liens.

Second, Ms. Schaedler-Moore argues that even if she cannot be subrogated in place of the original PMM lender, she should be construed as a purchaser of the Property without notice of the tax lien. If so, she argues that she would be entitled to the property free of the encumbrances. Each argument will be discussed in turn.

#### A. EQUITABLE SUBROGATION

Ms. Schaedler-Moore's first argument is that through equitable subrogation, she should be given priority over the NFTLs by standing in place of the original PMM lender from when Mr. Scharringhausen acquired the Property in 2009. (*Opp'n* 6:24–26.) The argument stems from the fact that purchase money mortgages are generally given priority over tax liens. See Rev. Rul. 68-57, 1968-1 C.B. 553 (explaining the IRS's position that PMMs have priority over tax liens because a taxpayer who acquires a property simultaneously burdened by a loan attached to the property only increases their wealth to the extent the property's value exceeds the loan).

Based on the premise that PMMs are given priority over tax liens, Ms. Schaedler-Moore argues that the original PMM lender, Wachovia (now Wells Fargo), would have had priority over the tax liens. Ms. Schaedler-Moore then asserts that, by refinancing the PMM, California law permits her to step into Wachovia's priority position through equitable subrogation.

Because property rights are a matter of state law, the Court must apply California law in determining the rights of the parties. Aquilino v. United States, 363 U.S. 509, 512–13 (1960) (citations omitted) ("[I]t has long been the rule that 'in the application of a federal revenue act, state law controls in determining the nature of the legal interest in which the taxpayer had in the property. . . .'"). California defines equitable subrogation as a broad equitable remedy available whenever "one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." Caito v. United California Bank, 20 Cal. 3d 694, 704 (1978).

Importantly, equitable subrogation is a lender's remedy. See Bank of New York Mellon v. Citibank, N.A., 8 Cal. App. 5th 935, 948 (2017) (emphasis added) (citations omitted) ("In short, equitable subrogation allows a *lender* who pays off a borrower's debt to a creditor to succeed to the rights of the creditor so paid."). For this reason, Ms. Schaedler-Moore's argument is fatally flawed. Although she alleges that she paid off the original PMM held by Wachovia, the problem is that she refinanced the PMM through a third-party lender, JG Wentworth. (*Counterclaim* at 7, ¶ 49.) The United States correctly points out that if Ms. Schaedler-Moore were subrogated into Wachovia's PMM priority position, then *both* she *and* JG Wentworth would skip ahead of the tax lien. The cases the parties cite support the position that if equitable subrogation is available, it must not be to the detriment of the other creditor parties.

For example, in Han v. United States, a couple was deceived by a real estate agent into purchasing a home encumbered by a federal tax lien. 944 F.2d 526, 527–28 (9th Cir. 1991). The couple used their own money to purchase the home, and in turn, the proceeds

were used to discharge the existing first trust deed PMM. Id. at 529. The court concluded that equitable subrogation was permissible under these circumstances because it would allow the couple to recover the money they actually paid out to the PMM lender in escrow. Id. at 529–30. Vital to the court's analysis was that the government would not be prejudiced because the original PMM lender already had priority over the tax lien. Id. Therefore, the government's share from the foreclosure sale would not be affected by permitting the couple to stand in place of the original PMM lender. Id. at 530.

In contrast, unlike the couple who paid off the PMM loan with their own money, here, Ms. Schaedler-Moore refinanced the Property through JG Wentworth. (*Counterclaim* 7, ¶ 49.) Therefore, her position is equivalent to that of Mr. Scharringhausen prior to the conveyance of the Property. Also, unlike Han, where subrogating the couple left the government in the same position before and after the sale, here, the United States would arguably be made worse off because their interest would be pushed from second to third priority behind both Ms. Schaedler-Moore and JG Wentworth. Further, because Ms. Schaedler-Moore occupies the position that Mr. Scharringhausen occupied prior to the conveyance, accepting her theory would imply that Mr. Scharringhausen's interest had priority over the NFTLs against him. That result is neither equitable nor supported by precedent.

The parties also cite Mort v. United States. 86 F.3d 890 (9th Cir. 1996). There, a borrower signed a promissory note secured by a deed of trust. Id. at 892. The IRS then filed notice of federal tax liens against the borrower's husband. Id. The borrower then conveyed the property to a trust, and a new loan was then taken out to pay off the original promissory note. Id. The new promissory note was later assigned to a third party, and when the government moved to foreclose on the property, the third party successfully argued that they should be subrogated into the original lender's position. Id. at 895. Critical to the court's analysis was the fact that the "IRS [would] be in the same position it was in at the time the tax lien was filed." Id. Put another way, because the original lender

1  had priority over the tax lien, allowing the third party to substitute for the original lender
2  was equitable because the parties were neither made better nor worse off.  Id.

3  This case also illustrates a concept contrary to what Ms. Schaedler-Moore is arguing.
4  In Mort, the lender who actually paid off the first promissory note was eligible for
5  subrogation.  That distinction did not change even when the second promissory note was
6  assigned to the third party.  Again, if the court were to accept Ms. Schaedler-Moore's
7  position, that would make the government worse off because the NFTLs would be
8  subordinate to both her and JG Wentworth's claims.  Therefore, Ms. Schaedler-Moore's
9  arguments fail as a matter of law.

### B.   PURCHASER WITHOUT NOTICE AND OTHER ARGUMENTS

Ms. Schaedler-Moore also raises the argument that the tax liens were terminated when she received the Property from Mr. Scharringhausen because she qualifies as a "purchaser." (*Opp'n* 7:3–9.)  However, this argument similarly fails because, regardless of whether she qualifies as a purchaser, she is charged with at least record notice of the tax lien on the Property.

The Tax Code provides that NFTLs are not valid as applied against any subsequent purchaser without notice. 26 U.S.C. § 6323(a).  Under Subsection (f), the statute provides that notice is effective if published in the situs of the property subject to the lien.  If notice is properly recorded, then subsequent purchasers are charged with having at least constructive notice of the NFTL.  See Brightwell v. United States, 805 F. Supp. 1464, 1472 (S.D. Ind. 1992); TKB Intern., Inc. v. United States, 995 F.2d 1460, 1466 (9th Cir. 1993) (finding no constructive notice where a reasonable inspection of the title index would not have revealed the presence of a tax lien).

Under Fed. R. Evid. 201, the court may—on its own or by request—take judicial notice of facts not subject to reasonable dispute because they are either generally known in the trial court's territorial jurisdiction or can be accurately and readily determined from a source that cannot be reasonably questioned.  The Court takes judicial notice of the fact

that the NFTL was recorded in the San Diego County Recorder's Office. (*Complaint* [Doc. 1-3] Ex. B.) Therefore, any argument that Ms. Schaedler-Moore lacked notice must fail as a matter of law, as the NFTLs against Mr. Scharringhausen were already attached and recorded in the San Diego County Recorder's Office before he transferred the Property to Ms. Schaedler-Moore. Therefore, under 26 U.S.C. § 6323, Ms. Schaedler-Moore is charged with at least constructive notice that the Property was encumbered by a tax lien when it was deeded to her.

Ms. Schaedler-Moore also argues that because she held a leasehold interest in the Property, and has spent "considerable resources to preserve, maintain, and improve the subject property," that should entitle her to some priority over the NFTLs. However, these arguments fail as a matter of law. Even if her leasehold could qualify as an interest in the Property under Section 6323—as explained above—she is charged with at least constructive notice of the tax liens. Additionally, Ms. Schaedler-Moore has failed to cite any authority, and the Court has been unable to locate any, that would suggest making improvements on property entitles any priority interest over an NFTL in the event of a foreclosure action.

### C.   STATUTORY DAMAGES UNDER 26 U.S.C. §§ 7432–33

Ms. Schaedler-Moore has also asserted two claims for statutory damages. First, under Section 7432, which provides "[i]f any officer or employee of the [IRS] knowingly, or by reason of negligence, fails to release a lien [already satisfied or unenforceable] on property of the taxpayer, [they] may bring a civil action for damages . . . ." 26 U.S.C. § 7432. Similarly, Section 7433 provides for civil damages in the event "any officer or employee of the [IRS] recklessly or intentionally, or by reason of negligence, disregards any provision of [the Tax Code] or any regulation . . . ." 26 U.S.C. § 7433.

Ms. Schaedler-Moore's claims are without merit. The statutory damages provisions provide a cause of action in the event the IRS disregards the Tax Code. However, Ms. Schaedler-Moore is bringing the action against the Department of Justice, not the IRS,

and is not contesting the validity of the original NFTLs imposed on the Property when Mr. Scharringhausen purchased it.  Therefore, Ms. Schaedler-Moore's statutory damage claims fail as a matter of law.

### IV.  CONCLUSION

Because each of Ms. Schaedler-Moore's counterclaims fail as a matter of law, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings in its entirety.

**IT IS SO ORDERED.**

Dated:  October 31, 2024

_____
Hon. Thomas J. Whelan
United States District Judge